The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States and this honorable court. Good morning ladies and gentlemen. We'll begin with the first case this morning. Osami versus Garland and Ms. Green. Good morning Your Honors and may it please the court. My name is Ileana Green and I represent the petitioner Mr. Ilir Osmani. This court should reverse and remand this matter to the Board of Immigration Appeals for three reasons. First, the board entirely ignored one of the two positive equities that the immigration judge found, namely Mr. Osmani's commitment to rehabilitation and rehabilitation was of central importance here because it was highly relevant to both the weight given to his criminal history and to his family ties. Second, even though the immigration judge made no findings at all regarding country conditions evidence in Kosovo, the board denied Mr. Osmani's request to remand for the immigration judge to consider that evidence and make findings in the first instance. And third, Your Honors, the board erred by considering arguments raised by the government for the first time on appeal, contrary to both the board's own precedent and its prudential rule of forfeiture. Each of these errors provides an independent basis for reversal and I will address each in turn starting with my rehabilitation argument, Your Honors. I have three points on that. The board's case law on rehabilitation is central to the discretionary waiver analysis. It ensures... Could I ask, excuse me, I hate to interrupt, but I would like you to explain to me if there is a link between the rehabilitation argument on the one side and your argument about the admission of the evidence from the witnesses that the immigration judge didn't think was necessary for the case since the immigration judge was already prepared to rule in Mr. Osmani's favor, but I'm particularly thinking of the evidence from the psychiatrist. Had that evidence come in, is it your position that there would have been a more complete record on rehabilitation and the role of his his dependents? Yes, Your Honor. We believe that that would have further supplemented the record, but that is not to say that there wasn't a finding of rehabilitation. The board's case law on rehabilitation is replete with references to Mr. Osmani's commitment to rehabilitation. He couches and contextualizes his criminal history within that context, and again, both parties, the board, the board, sorry, the government, and Mr. Osmani argued that rehabilitation had been found by the immigration judge. The argument, the government didn't make the argument that there had not been a finding of rehabilitation. Rather, the government made the argument that the immigration judge had placed too great an emphasis upon that finding of rehabilitation. Did the immigration judge find that he was rehabilitated, or did the immigration judge find as a fact that the record showed that one could predict, as the future went on, that he would be rehabilitated? I'm trying to distinguish between where he was in a given moment. There's some equivocal language in the immigration judge's statement. Sure, well, I think the way that rehabilitation is framed in the discretionary waiver analysis is looking at it as a probabilistic determination of his future likelihood of recidivism or his ability to turn his life around. And that's exactly what the immigration judge did here. And in fact, rehabilitation was the prism through which he then continued to view the other equities in the case. Ms. Green, in terms of the rehabilitation as a forward-looking step, the immigration judge specifically said, whether he will make it, I don't know. I think he will. Is that really a finding about forward-looking as opposed to past and efforts at the present that he had really undergone rehab efforts? I think it is a forward-looking inquiry. And I'd point you further down on A5 to his closing statement. He returns again to the issue of rehabilitation here to say that he has been addicted to drugs, and that has been his primary problem. And if he can beat that, then going forward, there's no concern here as to recidivism, because he has the capacity to completely rehabilitate himself. But he says, if he can beat that, he's not making, and I don't think anybody could, a factual finding that he will beat it. Sure. But again, I think that's exactly what a finding of rehabilitation is. It is predictive. It is premised on the facts and the indication that we have in front of us at the time. No one can absolutely predict the future. But here, the immigration judge indicated that he found Mr. Williams to be entirely credible, that he thought that there was sufficient evidence to indicate that there was a great likelihood that he could turn his life around here. And that was the lens through which he then viewed the other two equities in the case, mitigating his criminal history and looking to his familial ties, to point in favor of his rehabilitation. And again, that comes back to, you know, the centrality of the, his PTSD diagnosis. Ms. Green, but before you go too far down there, you said at the beginning, and you just reiterated, and I think you're right, that the immigration judge's discussion of the rehabilitative efforts really seems to address a mitigating factor for some of his criminal history, namely his drug addiction and his petty theft. And the court goes on, the same page you were pointing to before, at the end, in balancing, talks about the nature of his criminal history. The board specifically addressed criminal history and expressed its concern about the nature of the criminal history and the domestic violence aspect of the criminal history. Given that, why aren't you just asking us to reweigh the equities and reweigh the balance of the criminal history on that equity balance? That's a good question, Your Honor, but I think it misunderstands the rehabilitation finding that the immigration judge here. It wasn't just a mitigation of the criminal history. It was a separate finding that went to both the way in which the criminal history was contextualized, yes, but also to strengthen, again, his familial ties in the United States. If you believe that a petitioner has a chance to turn his life around, then you believe that he's going to take his mother to her medical appointment, that he's going to take his children to school, that he's going to return to the workforce and continue to provide financially for his entire extended family. But how does that go? It seems that the board looked at family ties, but the board was particularly concerned with the criminal history and the domestic violence aspect of the criminal history. There's nothing in the immigration judge's ruling that suggests those rehabilitative efforts mitigated the domestic violence criminal history. Well, Your Honor, I just want to note that my time is running a little bit short and I've reserved two minutes for rebuttal, but I do want to answer your question here, which is, I think the immigration judge's statement is made in general as to his entire criminal history, which includes the protective order. And he says, on balance, the nature of that criminal history is mitigated, as you say, by the rehabilitation efforts. And I think that would include what happened to lead to the protection order as well, where we know that drugs played a factor in Mr. Osmani's response in that situation. And to go back to the board's own decision on A2, they seem very much concerned with his petty theft and his history of criminalization that stems directly from his drug use, which, again, if they had considered rehabilitation, that would have gone to mitigating that negative equity in this instance. And here we have nothing in the board's decision to point us in, to indicate that they considered rehabilitation in any way, shape, or form. And it's just a basic principle of administrative law that the board needs to clearly explain its reasons. And it's given us no indication that it's done so here. And it's also left that finding undisturbed without even attempting a clear error analysis, which we know to be legal error. And I will reserve the rest of my time for rebuttal. Thank you, counsel. Mr. Mack. Good morning. May it please the court, Greg Mack for the Attorney General. The Attorney General has provided the Board of Immigration Appeals with de novo review authority here to decide as the final administrative body, whether a non-citizen is suitable for lawful permanent resident status in the United States. And here, using that authority, the board weighed and balanced the equities that the immigration judge considered. So, Mr. Mack, let me tell you one of the things that bothers me about this case. It comes to us in a very unusual posture. It's not unprecedented, but it's unusual because midway through his evidence before the immigration judge, the immigration judge announces that he's prepared to rule in Mr. Osmani's favor. So the immigration judge doesn't create a record with the remaining testimony from his personal witnesses, and perhaps even more importantly, from my standpoint, the expert who is prepared to talk about his addiction, about his mental situation. And he, as the winner, is not going to bring an appeal to the board based on the fact that the record was truncated. Now, of course, as it's entitled to do, the government takes the appeal to the board, and the board decides the appeal without a full deck, basically. The board decides the appeal without seeing what actually the expert would have to say about these matters, whether it's how the rehabilitation factors into domestic violence, or whether it's how the rehabilitation, how complete it is, is it going to, you know, are we making a hard prediction? So I'm concerned that the board, doing what the board is allowed to do, is not doing it on the basis of a proper record. Your Honor, the court's question is well taken. I do think, though, that the immigration judge took the expert's report into account. At page 68, the immigration judge refers to the post-traumatic stress disorder. So that particular piece of evidence was before the INJ. But can I say, Mr. Mack, I mean, yes, there's the paper record. But if we were to take that rationale, then we would actually never bother to allow experts to testify in proceedings, whether they were trial proceedings in an ordinary court or whether they were before the board, because we always have an expert report. And yet, any trial judge is going to tell you that the actual back and forth, the cross-examination, the oral testimony of an expert is a very important part of the process. And I think the IJ certainly doesn't have the expert's testimony. The IJ has the report. The IJ took it into account. It's in black and white on the IJ's decision. With respect to this notion of short-circuiting, the immigration judge asked the counsel for DHS, do you want to hear any more evidence? Counsel for INS or DHS says no. The IJ didn't ask counsel for DHS whether you concede, whether you agree with the grant. No, I agree. I totally agree with that. I guess it's, again, it's this unusual posture. We have, you know, Mr. Osmani, who would like, who was trying to make a more complete record, and the IJ says for me, that's not necessary. I have what I need, and counsel for DHS doesn't say, you know, we have evidence to show that, you know, his criminal record is even worse than you think, or we have evidence to show that whatever, you know, it might have wanted to say. It just says, okay, you know, this is fine with us. We will, we're reserving the right to appeal. Again, I have no problem with their reserving the right to appeal. That they can do. But the record on which the appeal is taken, particularly on these critical points, is not the record Mr. Osmani was trying to make, because in a sense, he won too soon. And so now he's trying to say, well, if you're going to rule against me, I need the rest of my evidence, and let the board evaluate the equities based on a full record. Well, let's be frank here. As soon as the DHS counsel said, I'm reserving appeal, that was the trigger for Mr. Petitioner to tell the immigration judge, wait a minute, time out, hold on. If they're going to reserve appeal, and I know the board has plenary authority over this question, I need to get every piece of evidence in that I can get in. After all, the petitioner, as we've noted in our brief, they have the burden of proof on the case in chief. If at that juncture, they believe they didn't have their full case in chief before the immigration judge, I think a first year lawyer would have said, I need to get everything I can. And if the IJ says, oh, no, no, no, I don't need to hear anymore, then you have a stronger case before this court at the second circuit. I mean, even though the IJ has just said, I don't want to hear anything else. I mean, it's like saying you need to make an exception. Absolutely. This is an administrative hearing where the board has plenary authority, and this court doesn't have jurisdiction over the discretionary decision. If you wanted to make your record, and you have the burden of proof in your case in chief, you've got to make your case in chief before the one administrative body who has plenary authority over the case. Even though the petitioner had no idea what you might be appealing on, because there were no comments from DHS at all during the hearing to give any indication of what you might be appealing. There's no, I think I said in the brief, there's no rule of forfeiture here by counsel for DHS. I'm not suggesting forfeiture. I'm just responding to your argument and asking you to justify your argument that they had some additional burden to put more in the record to justify their case when they didn't know what your complaint with the case was in the first place. The complaint with the case at that level would have been, you're not entitled to discretionary relief, and you're not entitled to a waiver of inadmissibility. They knew that going in before the immigration judge, and once the immigration judge says, I've kind of made up my mind, which I think is what counsel for DHS was looking at in real time before the immigration judge. But as soon as the counsel for DHS says I'm reserving appeal, if you as a litigant have a burden of proof, and you wanted to get your case in chief in, you didn't think you got your entire case in chief in, it was incumbent upon you before your opportunity before the immigration judge to get all of your evidence in before the immigration judge and say, for example, here, no. I want the expert to testify. The expert is prepared to testify by telephone. And what happened here, frankly, is petitioners pocketed, as the court said, they pocketed their win and figured they could go home, I guess not understanding the board has plenary review authority. No, I don't see that they didn't understand that. I mean, in a sense, what you're arguing is as soon as DHS says we're reserving appeal, we move into phase two of the administrative hearing before the immigration judge, and you go back and you revisit, you know, all of the evidence, and you bring in, you know, more about country conditions, and you bring in more about, I mean, I don't see anything of that sort in the administrative regulations. It looked like a very boilerplate reservation of right to appeal so that the government could go back and study the record and decide what it wanted to do. And was there anything in there that was appealable? And, you know, I don't see the notice in just a simple, we're reserving appeal. They probably say that in every hearing. When there's a particular, when there's a grant of relief, but again, Right, that's what I mean. That doesn't tell anybody. But the issue here was whether the person should have been granted discretionary relief. So that's the issue before the immigration judge. So they know when the DHS council says we're reserving appeal, that's their opportunity to say, wait a minute. I don't have, I don't have this one pocketed. I need to get my case in chief on so that we're not a year later before the court of appeals saying, oh, wait a minute. I didn't know that I was going to lose my chance to make my case in chief before the immigration judge. And that's just simple litigation tactics to make your case. If you think you need to make it, make your case in chief before the one administrative body who has plenary review over your case. Instead, as you say, they pocketed their win prematurely. And now they're here a year later saying we thought we could have put in more evidence. And let me say with respect to the remand issue on the experts report, the board here did not make any new findings of fact. The board has plenary review here. What about on the country conditions? There was nothing. Let me finish, please, Mr. Mack. There was nothing in the IJ's decision with respect to country conditions, which is a factor. It's a humanitarian issue and certainly an equity that could have been weighed. It speaks to, the country conditions doesn't speak to adjustment of status. It speaks more to the waiver and admissibility. The waiver and admissibility. Which was one of the two issues. I'm concerned about country conditions as well. I'm sorry for speaking over you, your honor. But the adjustment of status issue is the ultimate issue. And under INS versus Bagamas bond from the Supreme Court, the board can say we're going straight to the discretionary denial. We don't need to deal with the preliminary waiver and admissibility. And so the country conditions issues goes to the waiver and admissibility. The board has plenary review on discretionary, on the discretionary denial of adjustment of status and on the discretionary grant or denial of the waiver and admissibility. But it can leap over the waiver and admissibility under INS versus Bagamas bond. And with that, unless the court has any further questions, we'd ask the court to deny the petition for review or excuse me, dismiss the petition for review. Thank you, Mr. Mack. Ms. Green. To start with your question to the government, Judge Wood. Even if you think the immigration judge's decision of rehabilitation falls short of a finding, the record here was improperly truncated. If the government had made any indication before the immigration judge that the record was insufficient to support a grant, then Mr. Osmani would have insisted on completing the record with the testimony from his psychiatrist regarding his psychiatric diagnosis, his plan for rehabilitation, his family ties in the United States and the country conditions in Kosovo. And he should have been, he should have the opportunity to complete the record on remand so that the board can consider the equities on a full record. And with regard to the government's suggestion that their boilerplate reservation of appeal is enough to signal that we should have done more below, that's just an unrealistic sense of how this process works. The immigration judge asked whether they needed to hear anything else and they simply said no. They put on no pre-hearing statement, offered no witnesses, put on virtually no evidence, had a very cursory cross. We had no sense that this was anything more than the government just doing what it normally does in reserving the right of appeal here. And your honors, that's why we strongly believe that we should be allowed to remand this case to have the board consider it on a full record. Thank you. Thank you, Ms. Green. Thanks to both counsel and the case will be taken under advisement.